GATES *et al.*, *Appellants*, v. THE KANSAS CITY BRIDGE & TERMINAL RAILWAY COMPANY.

Division One, June 20, 1892.

1. **City Charter**: BRIDGE PIER: NUISANCE: INJUNCTION. Under the charter of Kansas City, empowering the city to direct and control the construction of bridges, the erection in a street of a pier authorized by the municipality is not a nuisance which can be enjoined by an owner whose property abuts on the street.

2. ———: ———: CONSTITUTION: DAMAGE FOR PROPERTY TAKEN FOR PUBLIC USE. The property-owner must show that the damages suffered are peculiar to himself and different in kind from the rest of the community to entitle him to the protection of the constitution (art. 2, sec. 21) providing that private property shall not be damaged for public use without compensation.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*McDougal & Sebree* and *Moulton & Callahan* for appellants.

(1) The weight of evidence is clearly against the judgment of the court, and for this reason this court should reverse that ruling and render such judgment as the circuit court should have rendered. *Benne v. Schnecko*, 100 Mo. 250; *Rawlins v. Rawlins*, 102 Mo. 563. It is only in doubtful cases when this court will defer to the finding of the trial court. *Droster v. Mueller*, 103 Mo. 624; *Fulkerson v. Sappington*, 104 Mo.

472; *Felton v. Gregory*, 104 Mo. 488; *McElroy v. Maxwell*, 101 Mo. 292. Municipal corporations have no power to alien or dispose of their public streets for any purpose inconsistent with their use as highways. And when this is done, to the special injury of a citizen, injunctive relief will be afforded. And the rule is that injury need not be beyond the possibility of compensation in damages, nor that it must be very great. *Wood v. Sutcliffe*, 2 Sim. (N. S.) 165; *Casebery v. Mowry*, 55 Pa. St. 419; Wood on Nuisances, sec. 778. "And the fact that no actual damages can be proven, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere in cases where the nuisance is a continuous one." Elliott on Roads & Streets, 497, note 3. (3) The charter of Kansas City, adopted under authority of the constitution of this state, on the eighth of April, 1889, expressly prohibits the municipal authorities from obstructing the public streets. By article 3, section 5, page 14 of the city charter, the authorities are required to prevent and remove all encroachments upon the public streets. The erection of this pier would be a continuing public nuisance, subject at any time to be abated by the municipal authorities, or those of the state. It follows that the ordinance authorizing the erection of this bridge pier in First street was utterly void.

*Karnes, Holmes & Krauthoff* for respondent.

(1) Appellants' abstract does not set out all the evidence, and hence this court will not review the finding below. *Craig v. Scudder*, 98 Mo. 664; *Bank v. Iron Co.*, 97 Mo. 38; *Nichols v. Nichols*, 39 Mo. 291. (2) As the defendant has the requisite municipal authority for the construction and maintenance of the pier at the point in controversy, the proposition is clear that it is

not an illegal structure. *Porter v. Railroad*, 33 Mo. 128; *Randle v. Railroad*, 65 Mo. 325; *Glaessner v. Anheuser*, 100 Mo. 508; Lewis on Eminent Domain, sec. 168. (3) Mere depreciation in value does not bring a case within the constitutional provisions relied on by appellant. The fact that the market value of property is depreciated by public improvement gives no cause for complaint. The case is *damnum absque injuria*. Dillon on Municipal Corporations [4 Ed.] sec. 587*d;* Lewis on Eminent Domain, sec. 236; *Van de Vere v. Kansas City*, 17 S. W. Rep. (Mo.) 695: *Rigney v. Chicago*, 102 Ill. 64; *Peel v Atlanta*, 11 S. E. Rep. (Ga.) 583. (4) This doctrine has been fully applied where the injuries complained of resulted from the obstruction or vacation of a public highway in the vicinity of the property. *Rude v. St. Louis*, 93 Mo. 415; *Fairchild v. St. Louis*, 97 Mo. 85; *Canman v. St. Louis*, 97 Mo. 92; *Lansing v. Smith*, 8 Cow. 146; *Carson v. Railroad*, 35 Cal. 325. (5) The testimony clearly negatives any impairment of the plaintiff's easement of access. (6) It has been held that even if a railroad track were placed so near the curb-stone as not to leave room for a wagon to stand while cars are passing no right of action exists. *Kellinger v. Railroad*, 50 N. Y. 206; *Carson v. Railroad*, 35 Cal. 325; *Clark v. Railroad*, 3 Phil. 259.

BRACE, J.—This is injunction to restrain the defendant from constructing a stone pier in First street in the City of Kansas, under an ordinance of said city authorizing its erection to support the south end of respondent's bridge across the Missouri river, authorized by an act of congress, upon which is to be laid a railroad track in the center, with carriage ways on each side for ordinary vehicles, flanked by sidewalks for pedestrians.

On the hearing the bill was dismissed, and the plaintiffs appealed.

Counsel for appellants state in their brief that there is but one contested point in the case, and that is, "Would appellants, in consequence of the erection of the pier in First street, suffer a damage to their property, or a special injury over and above the general injury to the public?" The partial abstract of the record with which we are furnished, and of which respondent complains, seems to have been prepared for the purpose of presenting this single question most favorably for appellants' contention for the affirmative of this proposition; and to it our attention will be confined, being enabled to give it proper consideration by the additional abstract furnished by the respondent.

The *locus in quo* is illustrated by the accompanying diagram:

The plaintiffs are the owners of lots 342, 343, 344 and 347, in block 40, as shown upon the diagram. The block is in a general way bounded on the north by First street, south by Second street, east by Cherry street, and west by Locust street. Three of the lots (342, 343 and 344) front on Cherry and one (347) on Locust street, and all run back to an alley sixteen feet wide, dividing the block in the center. First street runs alongside one of the lots (342) and is fifty feet wide; on the north side of that street opposite the intersection of the alley with that street is the pier in question, forty-three feet in length by thirteen feet in width. When built it will project into First street beyond its north line about thirteen feet, at the east end, opposite the northwest corner of plaintiffs' lot and the mouth of the alley, and owing to the deflection of First street to the northwest at that point the projection will be some further at the west end. This will be the situation of affairs when the premises are brought down to the

grade established by the city; at present, however, it exists in this condition only on paper. The present surface of the ground being about forty feet above grade and on a level with the top of the proposed abutment of the bridge, without any streets or alleys laid out or improved on it.

The plaintiffs are using their lots for the purpose of manufacturing brick out of the clay thereof, by which means they expect, in the course of five or six years, to reduce them to the established grade; when this is done and the adjoining streets and alleys are reduced to the same grade the top of the abutment will be about forty feet above the level of First street.

It is not claimed nor does the evidence show that the plaintiffs' property, in its present condition, would suffer any material damage by the erection of the abutment, or while this process of grading is going on. But the claim of special damage is based upon the idea that when at some future time the block and neighboring property, and the streets and alleys by which it is surrounded and intersected, shall have been brought down to grade and the streets and alleys become thoroughfares for public travel and business, plaintiffs' lots will become useful for business purposes and especially for warehouses, and, that the narrowing of the passage way of First street from fifty to thirty-seven feet in front of the rear of plaintiffs' lot number 342 and in front of the alley giving access to the rear of his other lots, by reason of defendant's pier, would depreciate the value of their property.

I.    By its charter the City of Kansas has power "to direct and control the laying and construction of steam railroad tracks, bridges, tournouts and switches in the streets and alleys" of the city (Charter, art. 3, sec. 1, par. 26), and the proposed pier to be erected by virtue of the exercise of this municipal authority is not a

nuisance that plaintiffs might have enjoined for that reason. *Glaessner v. Brewing Ass'n*, 100 Mo. 508; *Randle v. Railroad*, 65 Mo. 325; *Porter v. Railroad*, 33 Mo. 128.

II. The only ground upon which plaintiffs' action can be maintained is the right, if the erection will damage their property within the meaning of the constitution (art. 2, sec. 21), to have the work enjoined until such time as their damage shall be legally ascertained and paid. The question then is, whether the anticipated depreciation of plaintiffs' property in this case is a damage within the meaning of that section of the constitution.

The plaintiffs introduced a number of witnesses who expressed the opinion that the existence of the pier as located in the street would have the effect of depreciating the value of plaintiffs' property for business purposes, when it and the surrounding and neighboring streets, alleys and property should be reduced to the established grade, while the defendant introduced a number of witnesses who expressed the opinion that it would not. While the number of plaintiffs' witnesses on this subject was greater than that of the defendant, it does not follow necessarily that the weight of testimony was in their favor. The learned judge who tried the case, and who was familiar with the locality and better able to forecast its future than we are, was in a better situation to weigh this evidence than we are, and in a matter so largely speculative and conjectural, and depending upon so many contingencies, we should very much hesitate to disturb his judgment upon the weight of this testimony, even if we were assured that his action was predicated upon his estimate thereof. But even conceding that the weight of the evidence was with the plaintiffs, it does not follow, that because their

property would be depreciated by the location of a great general improvement for the public, authorized by law, in the streets with the consent of the city authorities, and not materially interfering with their use as public highways, they have a right of action for damages·for such depreciation, or to an injunction to restrain its erection until their damages are paid.

The right of abutting proprietors on the streets and alleys of cities under this provision of the constitution has quite recently and frequently received the consideration of this court, in the following cases: *Rude v. St. Louis*, 93 Mo. 415; *Fairchild v. St. Louis*, 97 Mo. 85; *Canman v. St. Louis*, 97 Mo. 92; *Kansas City, St. J. & C. B. Ry. Co. v. Railroad*, 97 Mo. 457; *Van de Vere v. Kansas City*, 107 Mo. 83; and it is not necessary that the same ground should be gone over again. The rulings in these cases may be summed up in the language of the syllabus to the first of these cases, that "a property-owner, in order to recover damages for an obstruction to a highway, must show that the damages suffered are peculiar to him, being such as are different in kind, and not merely in degree, from those sustained by other members of the community;" or, in the language of the learned judge in the last case, "that he must show that the property itself or some right or easement connected therewith is directly affected, and that it is specially affected."

The plaintiffs in this case have failed in both these respects. The *corpus* of their property is not disturbed or affected in any manner by the structure. Nor are they deprived of any incorporeal right appurtenant thereto; their access to and egress from their property remain unimpaired; and whatever inconvenience they may suffer in the legitimate use of the street and alley upon which their property abuts by reason of the narrowing of the street by this pier will be the

same in kind as that of every other citizen who may have occasion to use them for the same purposes, although it may be different in degree, from the immediate propinquity of their property and the more frequent use they may have to make of the street and alley than others for such purposes.

This is apparent from the evidence in the case, and upon the face of the premises. The judgment of the circuit court is affirmed. All concur, except BARCLAY, J., absent.