HICKMAN v. THE CITY OF KANSAS, *Appellant.*

In Banc, February 5, 1894.

1. **Municipal Corporation:** DAMAGE TO ABUTTING PROPERTY: STREET GRADE: CONSTITUTION. When abutting property is damaged by establishing the grade of a street or by raising or lowering the grade previously established, it is damaged for public use within the meaning of the constitution, article 2, section 21.

2. ———: ———: ———: ———: REMEDY. The foregoing constitutional provision is self enforcing and although the legislature may have enacted no law providing a mode for the ascertainment and payment of the compensation, resort may be had by the injured party to any common law action which will afford him adequate and appropriate means of redress.

3. ———: ———: ———: ———. An act of the legislature providing for proceedings for ascertaining damages without giving the landowner the right to initiate them, or process to compel payment of the damage after its ascertainment, does not provide an adequate substitute for the remedies to which the owner is entitled under the constitution, and is not exclusive.

4. **Statute:** COMMON LAW REMEDY. Where a statute confers a remedy in the affirmative, without containing any express or implied negative, for a matter actionable at common law, the common law remedy is not taken away.

5. ———: STATUTORY REMEDY. Where, however, a new right, or means of acquiring it, is given and an adequate remedy for violating it is also conferred in the same statute, the injured parties are then confined to the statutory remedy.

6. **Constitution:** STREET GRADE: DAMAGE: COMPENSATION. Under the constitution, article 2, section 21, providing that compensation shall be made for property "damaged for public use," a city is liable to an abutting property owner for damages caused by changing the natural surface of a street to a grade established for the first time. (*Davis v. R'y, 119 Mo. 180, followed.*)

7. ——: ——: ——: ——. The compensation for property "damaged by public use" should be such a sum as will compensate for the damage less any special benefit resulting to the property, but not less general benefits shared in common with other property in the neighborhood.

8. ——: ——: ESTOPPEL. Where a city establishes the grade of a street and a street railway company, in order to lay its track, fills part of the street to the grade line, a request by an abutting property owner that the grading be finished, does not estop him to recover damages from the city caused by establishing the grade.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*F. F. Rozzelle, W. S. Cowherd, James Black, R. W. Quarles* and *W. A. Alderson* for appellant.

(1) The act of the legislature, approved March 26, 1885, was exclusive. *Baker, Adm'r, v. Railroad,* 36 Mo. 543; *Railroad v. Oakes,* 20 Ind. 9; *State v. Bittinger,* 55 Mo. 596; *McCormack v. Railroad,* 9 Ind. 283; *Baird v. Wells,* 22 Pick. 312; *Leland v. Woodbury,* 4 Cush. 245; *Hull v. Westfield,* 133 Mass. 433; *Tower v. Boston,* 10 Cush. 235; *Stafford v. Ingersoll,* 3 Hill, 38; Sedg. on Construc. of Stat. and Const. Law [2 Ed.], 76, 341, note *a*, 343, 344. (2) Instruction number 5, given for the respondent and that numbered 6 given at the request of the appellant are palpably inconsistent. The one declared that the appellant was liable to the respondent for the grading done by the Kansas City Cable Railway Company, the other that the appellant was not liable therefor. (3) The appellant is not liable for any damage caused respondent's property by the grading done by the Kansas City Cable Railway Company. For this reason the judgment should be reversed and the case dismissed. Charter of appellant city, art. 8, sec. 1; Acts

of 1875, 250; *Thompson v. Boonville*, 61 Mo. 283; *Thrush v. Cameron*, 21 Mo. App. 394; *Stewart v. Clinton*, 79 Mo. 603; *Werth v. Springfield*, 22 Mo. App. 12; s. c., 78 Mo. 107. (4) Nor is the appellant liable to the respondent for any damage caused his property by the grading of Ninth street along the sides of the roadbed of the cable railway, because the respondent not only requested, but urged the appellant to do this grading. This is an admitted fact, and it is also admitted that he petitioned in writing for the construction of the cable line. *Volenti non fit injuria.* Instruction number 5, given for plaintiff, was, for this reason also, erroneous. For this reason the judgment should be reversed and the cause dismissed. *Cross v. Kansas City*, 90 Mo. 13; *Railroad v. Farrell*, 76 Mo. 183; *Vaile v. Independence*, 22 S. W. Rep. 695; *Burkam v. Railroad*, 122 Ind. 344. (5) There can be no damages resulting from the reduction of a street from the natural surface to a grade established for the first time. Dillon on Municipal Corporations [4 Ed.], sec. 995*b*; *Gardiner v. Johnstown*, 16 R. I. 94; *Anderson v. Bain*, 120 Ind. 254; *Callender v. Marsh*, 1 Pick. (Mass.) 431; *Kappel v. Keokuk*, 61 Iowa, 653; *Akron v. Co.*, 34 Ohio St. 334; *Aldrich v. Providence*, 12 R. I. 241; *Denver v. Vernia*, 8 Col. 404; *Rigney v. Chicago*, 102 Ill. 83; *In re Levering Street*, 14 Phila. 349. (6) Where the owner, or his grantor, has dedicated the street for public use, neither can recover for damages resulting from the establishment of a grade for the first time. Dillon on Municipal Corporations [4 Ed.], sec. 995*a*; Cooley's Const. Lim. [6 Ed.], p. 683. Dedication was for street purposes. See R. S. 1889, sec. 7309; *Denver v. Bayer*, 7 Col. 113. (7) The proper measure of damages in this case is the difference between the value of the property before and the value after the change of grade,

and not that given in instructions numbers 1 and 3 for plaintiff. *Springer v. Chicago*, 26 N. E. Rep. 515; *Sheehy v. Railroad*, 94 Mo. 580; *Taylor v. Railroad*, 38 Mo. App. 672; *Chambers v. Borough*, 140 Pa. St. 510; *Meyer v. City*, 52 Iowa, 560; *Church v. Milwaukee*, 31 Wis. 512; *Coal Company v. Chicago*, 26 Fed. Rep. 415; *Smith v. Floyd Co.*, 85 Ga. 420; *City Council v. Maddox*, 89 Ala. 181; *Chicago v. Taylor*, 125 U. S. 169; *Depuis v. Railroad*, 115 Ill. 99; *Harwood v. Bloomington*, 124 Ill. 50; *Railroad v. Matthews*, 34 Cent. Law J. (Ala.) 158; *Denver v. Bayer*, 7 Col. 127.

*Scarritt & Scarritt* and *Karnes, Holmes & Krauthoff* for respondent.

(1) The appellant complains that the respondent has pursued the wrong remedy in this case, and that he should have resorted to the appointment of commissioners to assess his damages, under the provisions of the act of 1885. A sufficient answer to this is, that the defendant has waived any right to abate this suit by answering to the merits and going to trial thereon. The act of the legislature referred to applies only to the remedy, and does not affect the jurisdiction of the court over the subject-matter of the suit or the person of the defendant, and is a mere matter of abatement, which is waived, if not pleaded. *Grove v. City of Kansas*, 75 Mo. 674; *Elfrank v. Seiler*, 54 Mo. 136; *Russell v. Ins. Co.*, 55 Mo. 593, 594; *Ganse v. Clarksville*, 1 Fed. Rep. 359; *Sheppard v. Graves*, 14 Howard (U. S.), 509; *Society v. Pawlet*, 4 Peters, 501. (2) The proper measure of damages in this case is stated in instructions numbers 1 and 3, given by the court on behalf of the plaintiff. *Bridge Co. v. Ring*, 58 Mo. 491; *Springfield v. Schmook*, 68 Mo. 395; *Railroad v. Richardson*, 45 Mo. 466; *Sheehy v. Railroad*, 94 Mo.

574–579; *Railroad v. Ridge*, 57 Mo. 600; *Railroad v. Waldo*, 70 Mo. 629; *Lee v. Railroad*, 53 Mo. 179; *Railroad v. Chrystal*, 25 Mo. 544; *Newby v. Platte Co.*, 25 Mo. 275, 276; *Taylor v. Railroad*, 38 Mo. App. 671. (3) Damages may be claimed for the grading of a street to the first established grade. *Werth v. Springfield*, 78 Mo. 110; *Smith v. Railroad*, 98 Mo. 20. Instruction number 5 given for respondent and number 6 given for appellant are not inconsistent. Besides, instruction number 6 is not supported by the evidence.

BRACE, J.—This is an action commenced in the circuit court of Jackson County, for damages to plaintiff's property occasioned by a change of the grade of Ninth street in said city, in which the plaintiff obtained judgment for $1,000, from which the defendant appealed to the Kansas City court of appeals, and the case was certified here, under the constitutional amendment, as involving the decision of a constitutional question.

Plaintiff's property, which he claims was damaged by the action of defendant, abuts on Ninth street. Previous to the extension of the city limits in 1885, Ninth street was a county road, which had been graded and used as such for many years, both sides of which, in the vicinity of plaintiff's property had been built up with residences and stores, for a considerable distance beyond the city limits. The plaintiff bought his property in 1883, and the next year built upon and improved it with reference to the then existing grade. In October, 1884, the Kansas City and Independence Railway Co. obtained the consent of the county court to build and operate a cable street railway on said road or street, the court, in its order providing that the company should build its line of railway upon the grade of the street as then maintained, and should in no wise

disturb the surface of the street in such manner as to impair its usefulness or prevent the flow of water along and across the same.   In the latter part of 1885, the limits of the city were extended so as to take in that part of said road or street in front of plaintiff's property.

By ordinance approved April 15, 1886, the city changed the grade of said street in front of plaintiff's property, to the present established grade, which raised the grade in front of said property about three and one half feet.  In the meantime all the rights and franchises of the Kansas City and Independence Railway Co., who had never availed themselves of the privilege aforesaid granted by the county court, passed to the Kansas City Cable Railway Co., which latter company soon after the passage of said ordinance, constructed the line of road on the grade established by said ordinance, filling in the street in the center thereof up to said grade to the width of about twenty or twenty-two feet.   Afterwards the city under an ordinance approved November 19, 1886, filled up and graded the street, on each side of this roadbed to the full width of the street, (fifty feet.)

The evidence tended to show that after the railroad company constructed its road and before the city finished the grading, the street in front of plaintiff's property was left in such a condition as to render it impassable, and to necessitate the completion of the grading by the city; that the raising of the grade necessitated the filling in of plaintiff's lot, the raising of his house and other structures, and the readjustment of all his improvements to conform to the established grade at a cost of about $1,000.

The court, after refusing certain instructions asked by defendant, among them two, instructing the jury that on the pleadings and evidence the plaintiff could

not recover, submitted the case to the jury on other instructions which will be noted as far as necessary in the course of the opinion.

I. By the constitution of 1875, it is provided: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested." Const., art. 2, sec. 21.

Prior to the adoption of the constitution of 1875, (although the doctrine was vigorously attacked in *Thurston v. City of St. Joseph*, 51 Mo. 510, in the opinion by Judge ADAMS) it was uniformly held that any damage resulting to an abutting property owner from a change of grade was *damnum absque injuria* for which the municipality was not liable, unless the injury could be shown to have resulted from the negligent or improper manner in which the work was done. *St. Louis v. Gurno*, 12 Mo. 415; *Taylor v. St. Louis*, 14 Mo. 23; *Hoffman v. St. Louis*, 15 Mo. 656; *Schattner v. City of Kansas*, 53 Mo. 162; *Imler v. Springfield*, 55 Mo. 119; *Wegmann v. City of Jefferson*, 61 Mo. 55; *Swenson v. Lexington*, 69 Mo. 157; *Stewart v. Clinton*, 79 Mo. 603.

To uproot this doctrine, and provide for compensation when property is damaged, as well as when it is taken for public use, the eminent domain clause in the constitution of 1865 was amended, by the constitution of 1875, to read as quoted, and since it has been considered the settled law in this state, that "when property is damaged by establishing the grade of a street, or by raising or lowering the grade of a street pre-

viously established, it is damaged for public use within the meaning of the constitution." *Werth v. Springfield,* 78 Mo. 107; *State ex rel v. City of Kansas,* 89 Mo. 34; *Householder v. City of Kansas,* 83 Mo. 488; *Sheehy v. Railway,* 94 Mo. 574; *Gibson v. Owens,* 115 Mo. 258.

It is also well settled law that this article of the constitution gives an absolute right and is self enforcing, and although the legislature may have enacted no law providing a mode for the ascertainment and payment of the compensation provided for, resort may be had by the party entitled to the right to any common law action which will afford him adequate and appropriate means of redress. *Householder v. City of Kansas,* 83 Mo. 488; *Sheehy v. Railroad,* 94 Mo. 574; *Keith v. Bingham,* 100 Mo. 300.

II. The defendant's first contention is, that this action commenced on the nineteenth day of September, 1887, is not maintainable, for the reason that by a law then in force, being an act entitled "An act to provide for the ascertainment of and payment for damages done by municipal corporations to private property for public use, as directed by section 21 of article 2 of the state constitution," approved March 26, 1885 (Session Acts, 1885, p. 47), amended by an act approved March 31, 1887 (Session Acts, 1887, p. 37), provision was made for the recovery of damages in cases like the one in hand and that by section 8 thereof, it was provided that "the above proceedings shall be exclusive of all other remedies in the courts of this state for the recovery from any municipal corporation of damages done to private property for public use within the meaning of section 21 of article 2 of the state constitution." The rule is, that if a statute gives a remedy in the affirmative, without containing any express or implied negative, for a matter which was actionable at common law, this does not take away the common law remedy

but the party may still sue at common law, as well as upon the statute. In such cases the statute remedy will be regarded as merely cumulative. But where a new right or the means of acquiring it are given, and an adequate remedy for violating it is given, in the same statute, then the injured parties are confined to the statutory remedy. *State v. Bittinger*, 55 Mo. 596; *Lindell's Adm'x v. Railroad*, 36 Mo. 543; *Soulard v. St. Louis*, 36 Mo. 546.

As we have seen the right which plaintiff had in this case was not a common law right, it was a new right, not a statutory right, strictly speaking, but a constitutional right, to have his damages ascertained and paid to him or into court for his use before his property was disturbed. Unquestionably the legislature might have provided a mode of procedure for ascertaining and paying the owner his damages under the constitutional provision giving the right that would have been exclusive, but the act of 1885–1887 did not undertake to enforce this constitutional right. Its whole scope was an attempt to provide a remedy for its invasion. The constitution *ex propria vigore*, had already provided the owner remedies through the courts of its creation for the protection of that right. These courts were at all times open to him either to restrain the municipality from damaging the property until compensation therefor is ascertained and made (*Gates v. Kansas City Bridge, etc., Co.*, 111 Mo. 28), or having damaged it, to compel the municipality to respond with the amount thereof ascertained by such courts, in a constitutional manner. (Cases cited *supra*.)

While it may be conceded that it was in the power of the legislature to provide an exclusive special remedy for determining the compensation for property damaged within the meaning of the constitution and for securing the payment thereof to its owners, yet

such remedy in order to be exclusive must be commensurate with the constitutional right and the remedies which by force of the constitution the owner is entitled to for its protection. The mere declaration of the legislature could not make the remedy provided by the act a substitute for the remedies to which the owner was entitled under the constitution, unless in point of fact it was an adequate substitute. Leaving out of view, entirely, the injunctive remedy, by which the owner's constitutional right to have his compensation measured and paid before the damages were inflicted, and for which the statute of 1885–1887 undertook to substitute no remedy whatever, was the proceeding therein provided for him to obtain compensation for the damages suffered, an adequate substitute for the remedy afforded him by an action for such damages under the constitution independent of the statute?

In view of the fact that section 8, which contains the legislative declaration aforesaid, was left out in the revision of 1889, and the exclusive character of the act removed by a new section (sec. 1821, R. S. 1889) it will be necessary to point out only one or two particulars in which the enactment failed to come up to the measure of an adequate substitute for the owner's remedy under the constitution. The act does not give the owner the right of initiating the proceeding or process, or other means of obtaining payment after the amount of his damages has been ascertained. It is true the original act did provide that the application to the circuit court for the ascertainment of the amount of damages by petition might be made, "either by the city authorities, or the owner of the property for which damages are claimed," but the amendment of 1887 (p. 38) required, that before the filing of such petition the city authorities must first define a benefit district. It is also true that section 7 of the original act did pro-

vide for execution against the municipality in the event that damages were not paid within six months after they were finally ascertained by the court, but this section was repealed in the amended act (p. 39). Thus the owner was left without the power of initiating the statutory proceeding for the ascertainment of his damages, and without process to còmpel their payment after they were ascertained, and, although the plaintiff in this case, by reason of the fact that no benefit district was ever defined by the defendant, was deprived of the poor privilege of testing its efficacy for his relief, yet this statute is invoked to defeat his action, secured to him by the organic law of the state. That under it the city might have had the plaintiff's damages ascertained, might be conceded, but having failed to do so, and to provide the means to pay the same, it can not be permitted to interpose this statute, and its own neglect to defeat his action. *Elgin v. Eaton*, 83 Ill. 535; *Lafayette v. Wortman*, 107 Ind. 404; *Jamison v. Springfield*, 53 Mo. 224.

III. It is next contended that, as the effect of the ordinance establishing the grade of Ninth street was for the first time to raise the grade above the natural surface, the defendant is not liable for any damage that may have resulted from the establishment of such grade, and in support of this contention Dillon on Municipal Corporations and some cases from our sister states are cited in support of the doctrine .favored by the learned author in section 995*b*, fourth edition of his valuable work, where he says: "It seems to us that, on principle, the mere provision of the constitution imposing a liability for property *damaged* for public use does not create a liability on the part of the municipality for reducing the natural surface of the street, in the course of its normal and ordinary

improvement for street purposes proper,, to a grade line for the first time established.''

The instruction of the court on this subject was in harmony with what has been understood to be the Missouri doctrine as announced and recognized in the cases cited *supra*, that the municipality is liable for damage occasioned by establishing a grade as well as for damage occasioned by raising or lowering a grade previously established.   In *Davis v. Missouri Pacific Railway Co.*, 119 Mo. 180, in division number one, the precise question was presented, and, after mature consideration of the subject and a discussion of the authorities, the conclusion of that division of the court was expressed by MACFARLANE, J., as follows:   "We are 'of the opinion, therefore, that the rule which allows compensation for consequential damages to property, caused by a material change of grade from the natural surface, is the most equitable to the property owners, and best conserves the public interest, and this rule is generally adopted under similar constitutional provisions'' (citing cases from other states), to which may be added *Groff v. City of Philadelphia*, 24 Atl. Rep. (Pa. 1892) 1048.

Without going over this ground again it is sufficient to say that we adhere to the doctrine as it has hitherto been recognized by this court, and so recently and directly expressed in *Davis v. Railroad, supra*, and hold that the court committed no error in predicating a right of recovery thereon.

IV.   It is next urged that the court committed error in the instructions on measure of damages, which were, in substance, that the plaintiff should be allowed such a sum as would compensate him for the damage sustained by him by reason of the grading of the street in front of his premises, less any special and peculiar benefits to the property resulting from such grading,

in which, however, was not to be included general benefits shared in common with other property in the same neighborhood. It is insisted for appellant that the true measure of damages in such cases is the difference between the value of the property before, and the value after, the change of grade, a rule that would charge the owner with general as well as special benefits, and which has received the support of the courts in some of the states, as appears by the cases cited in the brief of counsel for appellant.

When the constitution of 1875 was adopted, it was settled law in this state, that in adjusting the compensation to be made to owners of land taken for public use, the benefit to be deducted from the damage which the owner sustained by such taking is the direct and peculiar benefit that would result in particular to the owner's land not taken, and not the general benefit that such land would derive in common with the land of other owners in the neighborhood from the public use for which it was taken. *Newby v. Platte County*, 25 Mo. 258; *Plank Road Co. v. Pickett,* 25 Mo. 535; *Railroad v. Chrystal*, 25 Mo. 544; *Railroad v. Richardson*, 45 Mo. 466; *Lee v. Railroad*, 53 Mo. 178; *Railroad v. Ridge*, 57 Mo. 600; *Hosher v. Railroad*, 60 Mo. 303.

In the decision of these cases the constitutional provision applied read, "That no private property ought to be taken or applied to public use without just compensation." Const. 1820, art. 13, sec. 7; Const. 1865, art. 1, sec. 16. While a slight change in the phraseology was made in the constitution of 1875, the only change in the meaning was affected by inserting the word "damaged" and coupling it with the word "taken" and thereafter "just compensation" was to be made for property "damaged" as theretofore it had been made for property "taken". The

compensation for property damaged was made just as broad and no broader than compensation for property taken.   The standard for the measurement of the one had been already settled by judicial action, and by the same standard is the other to be measured under the constitution of 1875.   In the language of BREWER, J., in *McElroy v. Kansas City*, 21 Fed. Rep. 259, "The damage to property is placed upon the same basis as the value of property taken, and neither can be done without compensation first made.   In other words, uniting 'property damaged' with 'property taken' in the same clause and subject to the same prohibitions, places them in the same category as to judicial action. *   *   *   When the constitutional convention met, the rule of protection against the taking of private property had long been settled, and must have been familiar.   It did not attempt to prescribe two rules. It did not even make two enactments, but simply added 'property damaged' to 'property taken'; and for the courts to now hold that under the same language two rules were prescribed, is to create a distinction which has no just foundation, and would be mere judicial legislation."

In the course of the establishment by this court of the rule in regard to the benefit to be taken into consideration in determining the compensation to be made to the landowner, and since, it has from time to time been noted in the opinions that a different rule obtained in some other jurisdictions.   But this court has consistently maintained its position from the beginning through a long line of decisions down to the present day.   *Railroad v. Waldo*, 70 Mo. 629; *Combs v. Smith*, 78 Mo. 32; *Allen v. Railroad*, 84 Mo. 646; *Railroad v. Calkins*, 90 Mo. 538; *Daugherty v. Brown*, 91 Mo. 26; *Railroad v. Story*, 96 Mo. 611; *McReynolds v. Railroad*, 110 Mo. 484; *Ragan v. Railroad*, 111 Mo. 456; *Spencer*

*v. Railroad*, 23 S. W. Rep. 126; *Kansas City v. Morton*, 117 Mo. 446.

These cases show that the rule obtains and has been applied in the same manner regardless of the character of the public use for which the property of the owner was taken or damaged, whether for the purposes of a railroad, a county road, or a street. It has, in fact, become a fundamental rule, universally recognized by the legislature, by the courts, and the people, in the measurement of damages sustained by a landowner for the public benefit.

We have, heretofore, been urged to make a distinction in the measure of damages between cases where the land of the owner was appropriated and damaged, without being previously condemned for public use, and when the damages were to be ascertained in such proceedings; but the court would have none of it, replying that "the damage was the same, and the compensation should be the same." *McReynolds v. Railroad, supra; Ragan v. Railroad, supra; Doyle v. Railroad,* 113 Mo. 280.

We have also been pressed to make a distinction between a case in which a part of a tract of land is taken, and one in which the tract is damaged only, it being insisted that in the latter case the damage would only be the diminution in the actual pecuniary or market value, to obtain which all benefits, whether general or special, would have to enter into the calculation. In *Kansas City v. Morton, supra,* which was a proceeding to assess the damages which would result to an abutting proprietor from the grading of an alley, division number one, through MACFARLANE, J., replied that, "While the rule has been thus declared in some of the states under constitutional and charter provisions similar to ours, we do not think it consistent with our decisions. Our constitution secures to the property owner the right

to compensation when his property is damaged in the same terms as when it is actually invaded and taken. No reason is seen why the rule for assessing the benefits should be different." And in *Spencer v. Railroad*, *supra*, which was an action for damages to an abutting lot owner, division number two, speaking through BURGESS, J., said: "While contrary opinions have been maintained with great ability in courts of other states, and by elementary writers of much distinction, the rule in this state is well established, that in cases of this kind, in estimating benefits, the jury should be restricted, in estimating such benefits, to peculiar and direct benefits, or increase of value, as result to the lots in controversy, in which other lots in the same locality do not participate."

It would be a work of supererogation to add anything to what has been so well said in many of the cases cited in support of the justice and reasonableness of the Missouri rule on this subject, or to further show that the case in hand is within its principle. The rule is founded on the broad and equitable doctrine that every citizen should share the common benefits of a government whose common burdens he is required to bear; in the spirit of which axiom, while we maintain on the one hand that the abutting landowner whose property is damaged for the public use should have only such damages as are peculiar to his property, on the other hand we maintain, as illustrated in the cases cited, that in ascertaining his damage it shall not be reduced by benefits other than those that are also peculiar to his property. The vitality of the rule, in either case, is to be found in its inherent equity, and furnishes a sufficient reason for its adoption and maintenance. The instruction of the court upon the measure of damages in the present case was in harmony with this rule, and therefore not erroneous.

V. The railroad company, under its license from the county, had authority to lay its track upon the road. When the city extended its limits it succeeded to the relation formerly sustained by the county to the road, and took municipal jurisdiction of the territory, subject to all rights acquired under its predecessor. When, thereafter, the city established the grade of the street, as it had the power to do, the only way possible for the railway company to exercise its right was to lay its tracks in conformity to such grade. In bringing their roadbed to that grade for the purpose of laying their tracks they were simply obeying the command of the municipal government expressed by the ordinance. The damage for which plaintiff recovered was for the injury to his property, resulting from raising the grade in front of his property by the employees of the railroad company and those of the city in compliance with the requirements of that ordinance. The damage was the result of the exercise of the city's power, for which it is liable. *Sheehy v. Railroad*, 94 Mo. 574, and cases *supra*.

The *Sheehy case* is cited by counsel for appellant in support of the measure of damages for which they contend, but it is not at all in point for that purpose, and we know of no Missouri case that does give it support, except *Taylor v. Railroad*, 38 Mo. App. 668. The ruling in which, upon that question, we do not approve.

The fact that the plaintiff, after the grading of its roadbed had been completed by the cable company, requested that the grading of the street might be finished, ought not to estop him from recovering damages for his injury. If any error is to be found in the instructions upon this issue, it is in favor of the defendant.

We find no error in the record calling for a reversal, and the judgment of the circuit court is affirmed. All concur.