MONROE, J.
Plaintiff is the owner of •the property upon which he lives, fronting "70 feet on Park avenue, in the city of Shreveport, and extending 150 feet along Laurel ¡street, to an alley, and he complains that ■recently, and since his acquisition, the city has changed the grades of the two streets mentioned and has cut down the alley, so as injuriously to affect the value of his property and render it necessary that he should build retaining walls, etc. He estimates his damages at $4,000, and prays judgment for that amount. The defense is a general denial and an averment that the benefit resulting to plaintiff’s property from the matters complained of are greater than the injury.
It appears from the evidence: That plaintiff’s residence, at its nearest point (which is a projecting room) stands 19% feet from the banquette on Park avenue, and has a gallery extending along Laurel street (within a few inches of the property line) and supported by brick pillars; that his barn is built on the lines forming the corner of Laurel street and the alley; that before he bought the property the grades of the two streets mentioned had been adopted, though not actually established (being what are called “paper” grades), as 3% feet lower than the surface; and that after his purchase the city established the grades of which he complains as 3% feet lower than those previously adopted, and has proceeded to establish them to the extent of excavating Park avenue to a depth of 5.3 and Laurel street to a depth of 5.7 feet, the reason for its not excavating to the full depth (of 7 feet) being that the sewers of the city are in the way. As a result, of the work so done the'roadways on Park avenue and Laurel street have been lowered about 2 feet below the grades previously adopted (on paper), the banquettes have been provided with precipitous sides of unstable soil from 6 to 8 feet high; and the surface of the alley in the rear has been cut down below that of the property (leaving its sides in the same condition as those of the banquettes) to such a depth as to render it impracticable to' drive a vehicle into or out of the barn, so that the premises are, reasonably speaking, inaccessible, and the immediate surroundings unsightly, and, as the sides of the banquettes are washing and caving, this condition is not likely to improve, but is getting worse,' and the barn, which I stands upon the line of the alley, will in all *1047 probability fall into it before a great while, unless measures are taken to prevent it. So far as the banquettes are concerned, if the plaintiff, whether voluntarily or under compulsion, reduces them to a grade that will conform to those of the roadways, their raw, precipitous sides will be transferred to his lot, and the side on Laurel street will be immediately beneath his barn and the outer edge of the gallery of his house. Upon the other hand, if he leaves the banquettes as they are (assuming that he is permitted to do so), his house will be inaccessible from the roadways, as the roadways will be from the house, and, if he cuts passages through, he will render the banquettes impassable and dangerous, and no doubt get into trouble with the city authorities, and possibly with citizens who injure themselves by falling'into the cuts.
Considerable testimony was taken with a view of showing the effect of the condition as thus described upon the value of the property. A number of witnesses sworn for defendant are of the opinion that it affords plaintiff a fine opportunity to surround himself with terraces, and appear to think that the consequent enhancement in the value of the property will more than compensate the expense. They also think that, as the regrading .is to be followed by the establishment of a line of street cars on Laurel street' (in addition to the line already on Park avenue), plaintiff, even as the matter stands, has rather the better of the situation. There are other witnesses, called by plaintiff, who have not yet learned to appreciate tbe advantage of living above the dust and noise of the street and who are content with one line of cars — some of them going so far as to say that a little distance, a block, lends enchantment to the music of the bells. Upon the whole, this testimony is rather inconclusive as to what the effect of the grading (upon the value) will be, after the premises are again made safe, accessible, and presentable, and we are left in doubt whether either view would comm'and any overwhelming majority if submitted to the popular vote, the more-particularly as none of the witnesses seem; to have considered the question from a possible business, or “comer grocery,” point of view. We do not, however, understand any of them to hold that the property is now as desirable for use or as valuable for any other purpose as it was before the work of grading was done; the idea expressed by them being that it can be made so by the expenditure of a certain amount of money. As we are compelled, however, to deal with the question here presented upon the basis of an existing condition, rather than of a theory for the future, we consider that plaintiff’s, property has been damaged for a public purpose, and that the extent of the damage is represented by the amount that it will cost to put it in such condition as that it will be as desirable and valuable as before the damage was inflicted. As to what that cost will be there is a wide difference of opinion, A builder or contractor, who made an estimate at plaintiff’s request, testifies that the banquettes should be excavated, that there should be a retaining wall built around the three sides of the property, that the front lawn should be terraced, that there should be a concrete driveway and concrete steps on Park avenue, and that he will do the work for $2,240.79. Another idea which has been suggested, and which, in the last resort, is approved by the defendant, is that the side, as well as the front, of the lot can be terraced, and, by moving the barn, even the rear; that the brick pillars which support the Laurel street gallery can be extended downward the required distance, say 5% feet; and that no retaining wall is necessaiy, and one of defendant’s witnesses is willing to do-that work for $450. It is true that the supporters of this idea admit that the ter *1049 race under the gallery would probably produce no grass and would not be a thing of beauty, and they fail to explain, in view of the testimony that the soil is given to sliding in embankments, how such a terrace ■could be held in shape; nor, do we understand that, in the $450 referred to, there is included any compensation for the ground to be lost in the making of the terrace, particularly around the back yard, or for the inconvenience of having an improvement of that kind where a level surface would be more useful, as well as more appropriate. ‘Considering all the testimony as to the requirements of the occasion and the cost of making them, we are inclined to think that, as is sometimes the case, the plaintiff is demanding too much and the defendant is -conceding too little.
The city has done a work of great public utility, but it has no right to call upon the ¡plaintiff to pay more than his share. On the other hand, whilst the plaintiff is entitled to be made sound with respect to any particular damage that his property may have sustained for the purposes of such work, the -occasion is not one for the indulgence of vicarious liberality to himself with the money of the public. The law applicable to the ■case, as we understand it, is as follows:
The Constitution of the state provides that:
“Private property shall not be taken, nor damaged, for public purposes without just and adequate compensation,” etc. Article 167.
And the courts agree that such provision ■entitles an abutting proprietor to just and -adequate compensation for damages done to his property by the grading of a street. Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638. Before the words “nor damaged” were inserted in our Constitution, the Revised Civil Code contained a provision (as it does now) to the effect that, “in estimating the value of property to be taken” for & public purpose, there shall be no deduction on account of the benefit to be derived from the contemplated improvement (article 2633); the idea being that, in all benefits that inure to the community, each member of the community' is entitled to share upon the same terms as the others, and hence that, where the property of one is taken in order that such benefits may result, the owner is entitled to be compensated for the loss which he alone sustains, undiminished by any deduction on account of the benefit which he shares of right as a member of the community and in common with the other members. This having been, and being, the rule with respect to property which is “taken” for a public purpose, and the Constitution making the identical provision for compensation for property which is “damaged” for such purpose as for that which is “taken,” the same rule should be applied in the one case as in the other. As has been said by the Supreme Court of Missouri:
“Our Constitution secures to the property owner the right to compensation when his property is damaged in the same terms as when it is actually invaded and taken. No reason is seen why the rule for assessing the benefits should be different.” Hickman v. City of Kansas, 120 Mo. 110, 25 S. W. 225, 23 L. R. A. 658.
Applying this law to the instant case, we are of opinion that the testimony as to the desirability of residence sites elevated above the streets of Shreveport, as compared with those upon the same level, is relevant, as tending to show, it is thought, a benefit peculiar to plaintiff’s property, but that the testimony offered to prove a benefit resulting from the prospective establishment of an additional street car line is irrevelant, as tending to show a supposed benefit which, if it be such, is common to the community, and is not, therefore, to be taken into account in the ascertainment of the damage for which plaintiff claims compensation. The constitutional provision quoted is equally applicable where the damage claimed results from the *1051 original establishment of a grade as where the grade once established is subsequently changed, or, in other words, where a village, town, or city, having a surface grade to begin with, establishes a grade other than the surface, and in so doing damages the property of an individual, such individual is entitled to compensation, under the Constitution, as a person whose property has been damaged for a public purpose. And the rule is the same where the damage is inflicted by a change in the grade so established. Hickman v. City of Kansas, 120 Mo. 110, 25 S. W. 225, 23 L. R. A. 658, and note, 41 Am. St. Rep. 684. The adoption of a (paper) grade may be said to fix the liability of the property affected by it to future damage, but the weight of authority is to the effect that such damage is not recoverable until actually inflicted, and hence that it is the owner at the time who may recover it.
A municipality may not be able to grade all of its streets at one time, but it has the undoubted right to declare in advance what the grade shall be, and though, quoad property then existing 'and affected or to be affected, the liability to damage is' thereby imposed, and the right to recover it may be said to attach to the property, to be exercised when the damage shall be actually inflicted, it cannot be said that any such liability is imposed, or that any such right attaches, with respect to property which is then nonexistent. In other words, by the adoption of a grade, to be thereafter established, the municipality fixes the status of an existent lot as property which must sooner or later be affected by the actual establishment of the grade so adopted, and the right to recover for such damages as it may sustain, though inchoate at the moment, becomes perfect when the damage is actually inflicted, and may be exercised by the then owner of the lot. But, if the lot be not improved when the grade to be actually established in the future is ¡adopted, no liability for damage to improvements is imposed, and -no right of recovery with respect thereto, whether inchoate or otherwise, is created. Under such circumstances, if the then nonexistent improvements are subsequently, and at the option of the owner, placed upon the lot, they come into existence subject to conditions al- ‘ ready established and of which the owner of the lot has notice, and he must govern himself accordingly. Blair v. Charleston, 43 W. Va. 62, 26 S. E. 341, 35 L. R. A. 856, 64 Am. St. Rep. 837, and authorities there cited..
The question then recurs: What amount of money will it be necessary for plaintiff to expend in order to make his premises as-desirable, and therefore as valuable, for use, and for renting and selling purposes, as it was before the grading was done? The property cost $3,000 in June, 1905, and plaintiff thereafter expended $2,000 in its improvement, and this, we infer from the testimony, at a time when he knew, or should have known, of the change of grade of which he-now complains. We therefore deal with the question presented as though the property were worth $3,000 when the change of grade-was made, and confine ourselves to the effect of the actual establishment of the grade of 3% feet, which had been adopted before his-improvements were added; and upon that basis we are of opinion that he should recover $750.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be-annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff, Drury T. Manning, and against the defendant, the city of Shreveport, in the sum. of $750, with legal interest thereon from judicial demand and costs in both courts.