Richard LANGE and Fern Lange, Plaintiffs-Respondents,

v.

CITY OF JACKSON, Missouri, a Municipal Corporation, and Loos & Hoffmeister Construction Company, Defendants-Appellants.

No. 33157.

St. Louis Court of Appeals.

Missouri.

April 15, 1969.

Buerkle & Lowes, Kenneth L. Waldron, Paul A. Mueller, Jr., Jackson, for defendants-appellants.

Limbaugh, Limbaugh & Russell, Cape Girardeau, for plaintiffs-respondents.

PER CURIAM.

This is an action against the City of Jackson and Loos and Hoffmeister Construction Company to recover damages for injury to their property due to the change of grade of Corinne Street from its natural grade to a grade established by ordinance. The case was tried to the court, a jury having been waived by the parties. The trial resulted in a finding and judgment for the plaintiffs in the sum of $2,500.00. Defendants have appealed.

◼ The case having been tried by the court, our review under Civil Rule 73.01(d), V.A.M.R. is de novo on both the facts and the law, limited, however, to the matters urged on appeal by appellants. DeBow v. Higgins, Mo., 425 S.W.2d 135.

Plaintiffs are husband and wife, and are the owners of a house and lot at the southeast corner of the intersection of Blanche and Corinne Streets in the City of Jackson. Blanche Street is paved with concrete at its natural grade. It runs north and south. Corinne Street runs east and west along the north edge of plaintiffs' lot. Plaintiffs' house faces on Blanche Street. Their lot is 60 feet wide and is level with Blanche Street. The house is 32 feet wide. Corinne slopes from west to east beginning 10 or 12 feet from its intersection with Blanche. The width of the right-of-way of Corinne is 50 feet.

Plaintiffs purchased their property in July, 1953. The house is in reasonably good condition. It has two bedrooms, a living room with hardwood flooring, a tiled kitchen and a bathroom. There are storm windows throughout the house. The front door of the house is about 9 inches above the front yard. At a point about one-third of the way from the front to the rear of the house the side yard begins to slope considerably downward so that the basement door at the rear of the house is approximately at ground level. At the rear of the house is a 24′ x 30′ carport. It is 14 feet from the eastern edge of the Corinne right-of-way to the carport. At the time plaintiffs moved into their property there was a driveway from the carport to Corinne. There was gravel on Corinne from Blanche Street to a point beyond plaintiffs' driveway. It was placed on the natural grade and was several feet from the plaintiffs' property line. It was 4 or 5 inches higher than the right-of-way adjacent to plaintiffs' lot.

Plaintiff, Mr. Lange, testified that the natural surface of Corinne at the point where the driveway entered was a "foot or better" higher than the level of the carport. Later he testified it was "Between a foot to a foot and a half" higher. He further stated he was able to use the driveway to the carport, and experienced no trouble using it in bad weather. He stored there an automobile, a pickup truck, and occasionally a tractor.

On July 21, 1966, the city by Ordinance No. 1546 declared it necessary to improve Corinne Street by bringing the same to grade and paving the same with Portland cement 33 feet wide with integral curb and gutters. It was also provided that the work should be done in accordance with the plans and specifications on file with the city clerk. Thereafter the city contracted with Loos & Hoffmeister Construction Company to perform the work in accordance with said plans and specifications. In performing the work under the contract Corinne was brought to the grade established by said plans and specifications. The work was completed November 1, 1967.

The fill necessary to bring the street to the established grade embraced the whole right-of-way. Thomas Meyer, plaintiffs' witness, testified that the level of the

right-of-way at the driveway, after the work was completed, was 6 to 6½ feet above the level of the entrance to the carport. Plaintiff Richard Lange estimated the elevation as being between 4 and 5 feet. Defendants' witness C. R. Trotter testified on direct examination that the fill opposite the driveway ranged from 2 to 3½ feet above the natural surface. On cross examination he stated there was an increase of approximately 4 feet. Mr. Trotter was a consulting engineer on the job and had prepared the plans and specifications under which the work was done.

Thomas L. Meyer testified that the fill alongside plaintiffs' property had caused damage in that the carport could not be used as it had been previously. He further testified that it would be useless to build the driveway up to the present elevation for the reason it would result in about a 45 degree angle between the floor of the carport and the street. He stated it would be difficult to use during bad weather, and that under normal conditions there would be the problem of mufflers and bumpers dragging in coming off the street and in entering the carport. He further testified, " * * * to bring the drive into the carport at street level would constitute a great expense as far as building a foundation and filling it and rebuilding, of course, the carport, changing the total elevation of the back of the house, you know, where the carport will be and it would also necessitate quite a bit of fill to bring the yard back to a decent appearing condition." The witness estimated that the cost of the change to put the driveway and carport in a usable condition would be in the area of $3,200.00. He testified that in his opinion the difference between the market value of the property prior to the change of grade, and its market value immediately after said change of grade was $3,200.00. On cross examination he testified that before the change of grade plaintiffs' property had a market value of $9,950.00, and that the top value after the street was raised and paved was $7,950.00.

Woodson Niswonger, who had been in the real estate business for many years in Cape Girardeau County, testified for plaintiffs. He testified that the cost to repair the damage to plaintiffs' property due to the elevation of Corinne Street would be $3,240.00. He stated that the market value of the property prior to the street improvement was in the area of $10,000.00 to $10,500.00. On redirect examination he testified the present market value of said property was $7,500.00.

Plaintiff Richard Lange testified that before the fill was made the property was worth about $10,000.00, and after the change of grade it was worth about $7,000.00. Mrs. Lange gave like testimony.

Goldie Crosnoe, a general contractor, testified that he had examined plaintiffs' property to determine whether a driveway could be built from Corinne to the carport. He stated that his conclusion was that it would be a waste of money; that it was not feasible to put in such a driveway that would be satisfactory to the owners; that the steepness of the grade and the distance between the pavement and the carport would create the problem of the rear end of a car dragging coming off the street and entering the carport; and, that it would be hazardous for use during periods of snow and ice. The witness also gave testimony to the effect that putting the drive at another location would not solve the problem. He also testified he had considered the cost of filling the backyard and raising the level of the carport by tearing it down and rebuilding it. He stated that the cost factor would be prohibitive.

On cross examination Mr. Crosnoe testified it was his general impression that there was not room to build a new carport at the side of the house. He also stated he did not notice if there was sufficient room to build one where, in using it, the cars would be parked parallel to the house. In this connection it should be noted that it was undisputed that the distance from the

present carport at the rear of the house to the street is 14 feet.

Wilson Crites who was in the real estate business in Jackson testified for defendants. He gave it as his opinion that the market value of plaintiffs' property prior to paving Corinne was "around $9,000," and that the market value after the street was paved was "around $7,500." On cross examination he stated that putting in the concrete paving had enhanced the value of the property by $1,000.00. (A benefit not peculiar to plaintiffs' property, but one shared by other property owners.)

Louis A. Loos testified that his firm did the work of raising the grade and paving Corinne Street. He further testified that he could construct a driveway from Corinne into plaintiffs' property that would be usable; and that the work on the street was done in accordance with the plans and specifications.

Mr. Loos testified on cross examination that the fill was steeper than he would have wanted it, and unless some precaution was taken it would wash on to plaintiffs' property. He further testified he had no instructions either to seed or sod the bank.

■ The first error assigned is that the trial court erred in overruling appellants' motion to dismiss, and in entering judgment for plaintiffs. In support of this assignment it is urged that there can be no recovery under the facts in the instant case for the reason that under § 88.673, RSMo 1959, V.A.M.S., damages can only be allowed where there is a change of grade from one previously established by ordinance; that the elevation of Corinne Street was not a change from a previously established grade, but was a fill bringing the street from its natural surface to its first established grade.

We find that the court did not err in its ruling on the motion to dismiss. The City of Jackson enacted Ordinance No. 1846 which established the grade of Corinne Street higher than its natural level. But in making the fill to bring the street to the established grade plaintiffs were, as shown by the evidence, deprived of reasonable access to the street from their property, and from the street to their carport. Such a deprivation is clearly a violation of a private right and constitutes damage for which an action will lie, not by virtue of the statute, but at common law to enforce an obligation owed them under Article 1, § 26 of the Constitution of Missouri, V.A. M.S. Davis v. Missouri Pac. Ry. Co., 119 Mo. 180, 24 S.W. 777; Hickman v. City of Kansas, 120 Mo. 110, 25 S.W. 225; Cooper v. Massachusetts Bonding & Ins. Co., 239 Mo.App. 67, 186 S.W.2d 549; Robinson v. Poplar Bluff, Mo.App., 293 S.W. 503; Quinn v. City of Columbia, 152 Mo.App. 511, 133 S.W. 663.

Article 1, § 26 of our constitution provides that private property shall not be taken or *damaged* for public use without just compensation. The Constitution of 1875 contained the same provision, and in Davis v. Missouri Pac. Ry. Co., supra, it was held that under said constitutional provision the owner of a lot fronting on a public street may recover for the damage to said lot caused by raising the street from its natural surface to a legally established grade. The principle stated in the Davis case was approved by the Supreme Court, en banc, in Hickman. In that case the court after observing that prior to the adoption of the Constitution of 1875 it had been the law that an abutting property owner could not recover damages resulting from a change in grade, further said: (l. c. 226)

"* * * To uproot this doctrine, and provide for compensation when property is damaged as well as when it is taken for public use, the eminent domain clause in the constitution of 1865 was amended by the constitution of 1875 to read as quoted, (to include damage) and since it has been considered the settled law in this state that 'when property is damaged by establishing the grade of a street, or by raising or lowering the

grade of a street previously established, it is damaged for public use, within the meaning of the constitution.' Werth v. City of Springfield, 78 Mo. 107; State v. City of Kansas, 89 Mo. 34, 14 S.W. 515; Householder v. City of Kansas, 83 Mo. 488; Sheehy v. Railway Co., 94 Mo. 574, 7 S.W. 579; Gibson v. Owens, 115 Mo. 258, 21 S.W. 1107. It is also well-settled law that this article of the constitution gives an absolute right, and is self-enforcing; and, although the legislature may have enacted no law providing a mode for the ascertainment and payment for the compensation provided for, resort may be had, by the party entitled to the right, to any common-law action which will afford him adequate and appropriate means of redress. * * *"

There is no statute providing an adequate remedy by which plaintiffs could compel the city to respond in damages for what clearly appears from the evidence to be an unreasonable obstruction of their right of access to the street. For that reason this action is maintainable. See Hickman v. City of Kansas, 120 Mo. 110, 25 S.W. 225, l.c. 228, 229.

■ It is next urged that plaintiffs should not recover because through their own lack of diligence in failing to ascertain where their lot line was with reference to Corinne Street, the carport was built too near to said street; thus their damage was due to their own acts for which the city should not be held liable. There is no merit to this contention. Although the carport was 14 feet from the edge of the right-of-way, plaintiffs were able to use the driveway without difficulty. It was only after the street was raised by the city that the driveway became unusable due to an unreasonable obstruction by the city.

Defendants' final point is that the court did not apply the proper measure of damages and therefore the amount awarded was excessive. In support of this contention it is urged that the correct amount should be the cost of repairing the driveway so as to put it in a usable condition. Defendants no doubt rely upon the testimony of their witness Trotter who testified that from an engineering standpoint a usable driveway could be built from the street if properly constructed. However, on cross examination he stated that such a driveway would be an "expensive proposition." He did not testify as to the cost of the work.

According to the more creditable testimony of plaintiffs' witnesses a usable driveway could not be constructed by merely elevating said driveway to the level of the street; that the carport would have to be torn down and rebuilt and changes made in the level of the yard. Plaintiffs' witness Meyers estimated the cost of doing this work at $3,200.00. Mr. Niswonger stated the amount would be $3,240.00. Defendants offered no evidence on this phase of the case.

The testimony with reference to the diminution in market value ranged from $1,500.00 to $3,000.00.

■ The general rule in cases of this kind is that when the reasonable cost of repairing the damage by restoring the premises to their former condition is less than the diminution in the market value of the property, the cost of reconstruction is the proper measure of damages. On the other hand, when the cost of restoring is greater than such diminution the latter is the true measure of damages. Smith v. Kansas City, 128 Mo. 23, 30 S.W. 314; Medley v. Jackson, Mo.App., 200 S.W. 676.

■ We find that under the evidence presented there was damage to plaintiffs' property as a result of the elevation of the street in question; that the reasonable cost of repairing the injury to said property to

afford reasonable access to the street would be more than the diminution in the market value of the property; and, that the proper measure of damages to be applied is the difference between the market value of the property before and after the injury. We further find that the amount of damages awarded by the trial court is within the range of the testimony adduced, and is not excessive. We find that plaintiffs are entitled to a judgment in their favor for $2,500.00.

The judgment of the trial court is affirmed.