### THE STATE *ex rel.* THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, *Appellant*, v. THE CITY OF KANSAS.

1. **Condemnation Proceedings : DAMAGES : BENEFITS.** Authority
   for taking property for street purposes in Kansas City, as well as
   authority for assessing benefits to pay for the improvements, against
   property specially benefitted by such improvements, is conferred by
   article seven of the act of 1875. Laws, 244, 249.

2. **Practice : CERTIORARI : AMENDMENT.** While the writ of *certiorari*
   brings up for review only such facts as appear on the face of the
   record, the transcript filed in answer to the writ may be so
   amended as to show the existence of a fact actually appearing
   upon the record, but which had been omitted from it as filed.

3. **Taxation, Exemption From** : ASSESSMENT FOR LOCAL IMPROVE-
MENTS. Where property is, by statute, exempt from general and
special taxation, this does not relieve it from liability to assessment
for special benefits for local improvements. (Affirming *Farrar v.
City of St. Louis*, 80 Mo. 379).

4. **Condemnation Proceeding** : SPECIAL BENEFITS: DAMAGES:
KANSAS CITY. The provision of the charter of Kansas City au-
thorizing the assessment of special benefits to be set off against the
damages assessed for taking land for street purposes, is not ob-
noxious to section 21, article 2, of the constitution. (Affirming
*Jackson County v. Waldo*, 85 Mo. 637).

*Appeal from Jackson Circuit Court.*—HON. F. M.
BLACK, Judge.

AFFIRMED.

*Strong & Mosman* and *White & Spencer* for ap-
pellant.

(1)  Relator adopted the proper remedy in the case,
and the record of the mayor's court alone can be looked
to as a warrant for its proceedings, and, therefore, the
court erred in permitting the extract from the proceed-
ings of the council meetings to be considered as a part of
the record. *State ex rel. Greeley v. St. Louis*, 67 Mo.
113 ; Laws 1875, p. 249, sec. 8 ; *Railroad v. Board of
Equalization*, 64 Mo. 249 ; *McQuoid v. Clancy*, 1 West-
ern Rep. 433.  (2) The judgment of condemnation must
show affirmatively that every substantial requirement of
the statute has been complied with. *Ellis v. Ry.*, 51
Mo. 200 ; *State ex rel. Greeley v. St. Louis*, 67 Mo. 113 ;
*Cunningham v. Railroad Co.*, 61 Mo. 33 ; *Whitney
v. Platte County*, 73 Mo. 30 ; *McQuoid v. Clancy*,
1 Western Reports 433.  (3) By the constitution of
the state of Missouri, adopted in 1875, compensation
for damages caused by the exercise of the right of emi-
nent domain must be paid in money only, and taxation
in proportion to benefits is illegal.  Article 2, sec. 21 ;

article 3, sec. 1; article 4, sec. 10; article 10, sec. 1; article 10, sec. 10. (4) The record and map, made part thereof, show that the land of the relator affected by these proceeedings was brought within the city limits by the act amendatory to the charter of the City of Kansas, approved March 11, 1873, was undivided, and exceeded five acres in area, and, therefore, was not subject to special taxation. Session Acts of 1873, p. 282, sec. 3. (5) That no valid order of publication was ever made is shown by the record. Session Acts 1875, p. 208, sec. 7; *Shell v. Leland*, 45 Mo. 289 *State v. Metzger*, 26 Mo. 65; *Bcrsch v. Schncider*, 27 Mo. 101; *Halbeck v. Toledo*, 11 Ohio St. 219; *Kidder v. Peoria*, 29 Ill. 77; *Specht v. Detroit*, 20 Mich. 166. (6) No sufficient notices of the proceedings were ever issued, and the record fails to show proper publication of the notice prepared by the clerk of the City of Kansas. (7) The verdict of the jury itself shows disregard of the charter requirements, and the whole record s hows a taking of the property for private and not for public purposes. 41 Cal. 525; 59 Mo. 80; 4 Bush, 54; 41 N. Y. 123; 36 Mo. 456; 5 Gilm. 416; 58 P a. St. 320; 49 Mo. 552; 1 Gill. (Md.) 480. (8) The charter provisions authorizing the city council to determine the limits within which property should be assessed for benefits are unconstitutional and void. 4 N. Y. 430; 47 N. Y. 608, 613; 19 N. Y. 118; 16 Mich. 269, 276; 4 Zab. (N. J.) 663; *Gotolhas v. City*, 3 Am. & Eng. Corp. Cases, 622; *Brown v. Dewer*, 3 Am. & Eng. Corp. Cases, 630; *San Mateo case*, 8 Am. & Eng. Railway Cases; *Baltimore v. Schaffer*, 10 Am. & Eng. Railway Cases, 241.

*Ed. L. Scarritt* and *W. A. Alderson* for respondent.

The appellant railroad company has projected eight

propositions as the reason why this cause should be reversed. Those propositions we deem entirely without merit. The proceedings to condemn appellant's property for public use were instituted and consummated under the charter of the City of Kansas of 1875; and yet the appellant invokes the provisions of the act of 1873 amending the charter of said city, an act which was repealed by the charter of 1875. The property of appellant was at the time of the institution and trial of these proceedings subject to special taxation. Sec. 3, art. 7, Charter of the City of Kansas; Acts of 1875, 245. This is a sample of appellant's contention. The necessities of the public demand that the appellant's tract of land be subjected to the exercise of the power of eminent domain. Situate in a thickly populated portion of the city, it must yield to public demand and convenience. The wonderful progress of the City of Kansas should not be throttled by land proprietors. Public thoroughfares must be had, and legal technicalities should not be permitted to defeat the will of the people.

NORTON, J.—This is a proceeding by *certiorari* instituted by plaintiff in the circuit court of Jackson county, calling in question the regularity and validity of the action of defendants in opening and extending Genessee street in Kansas City. The circuit court ruled in favor of defendants and rendered judgment quashing the writ, from which the plaintiff appeals.

It appears from the record that in 1879, Bartlett, Coolidge & Foster, owned a tract of land which had been brought within the city limits by virtue of an amendment of the charter of Kansas City, enacted in 1873. This tract of land contained more than five acres and was undivided. In 1880 these parties conveyed this land to plaintiff, who, in 1883, commenced this proceed-

ing. It further appears that a portion of this land was condemned and taken, in 1879, for said Genessee street; that the damage for the taking was assessed at the sum of fifteen hundred dollars, and that benefits were assessed against that portion of the land not taken at the like sum of fifteen hundred dollars.

Authority for taking property for street purposes in Kansas City, as well as authority for assessing benefits to pay for such improvements, against property especially benefitted by such improvements, is conferred upon the city by article 7, Acts 1875, pages 244–249. Without entering into detail and following, step by step, the proceedings taken to open said street, it will be sufficient to say that the record brought up to the circuit court by the *certiorari* shows a substantial, if not a literal, compliance with the sections of the article of the charter above referred to, and we shall content ourselves with only noticing such objections made by the plaintiff, which, if well taken, would invalidate the proceeding.

It appears that defendant, in answer to the *certiorari*, filed a transcript relating to the opening of said street and condemnation of property for that purpose, among which were orders of publication, published in the English language by the Mail Publishing Company, and in the German language by Werese & Lamp. Subsequently to the filing of this transcript defendant asked leave to amend or perfect it by filing as a part of the same proceedings a certificate showing that the contract for doing the city printing was awarded to the above named parties. The leave was granted over the plaintiff's objection, and this action of the court is complained of as being erroneous. While recognizing the correctness of the rule as announced in 64 Mo. 294, that the writ of *certiorari* brings up for review only such facts as appear on the face of the record, we are not able

to see how it has been infringed in this instance, when by leave of court an amendment of the record was allowed, showing the existence of a fact actually appearing upon the record, but which had been omitted from the record as filed. The power of the court to grant such leave as was granted in this case is expressly affirmed in 67 Mo. 113.

The tract of land now owned by plaintiff, at the time a portion of it was taken for Genessee street, contained more than five acres, and was brought within the city limits by an act of the legislature (Acts 1873, 280), and it is insisted by plaintiff that it could not be subjected to any assessment of benefits to pay for local improvements. This claim is based on the third section of said act, which provides as follows : " Upon all property made taxable by law for state purposes, within all that portion of the city brought by this act within the limits of the city, and which, prior to the passage of this act, was not embraced in said limits, the common council shall have power to levy a tax of one per centum per annum for the period of three years from the beginning of the next ensuing fiscal year. One-half of the fund derived from said tax shall be expended for the purpose of general improvements within the limits last aforesaid, and the remaining half shall be applied to the general purposes of the city ; after the expiration of the said term of three years that portion of the city in this section specified shall, for all purposes of general and special taxation, and in all other respects, be treated and considered the same as the remaining portion of the city ; *provided, however*, that no subdivision of over five acres shall be subject to such taxation." The claim made, we think, is not well founded. Without elaborating the question it is sufficient to say that the exemption from general and special taxation, as provided in said section three, does not exempt the property from

liability to assessment for special benefits for local improvements, for the reasons given in the case of *Farrar v. City of St. Louis*, 80 Mo. 379 ; and *Sheehan v. The Good Samaritan Hospital*, 50 Mo. 155.

It is also insisted that the charter provisions authorizing the assessment of special benefits to be set off against the damages assessed for taking the land for said street are obnoxious to section 21, article 2, of the constitution, which provides as follows : "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by jury or board of commissioners of not less than three free-holders, in such manner as may be prescribed by law ; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed, nor the proprietary rights of the owner therein divested. The fee of land taken for railroad tracks without consent of the owner thereof, shall remain in such owner, subject to the use for which it is taken." In the case of *County of Jackson v. Waldo*, 85 Mo. 637, the precise question here raised was presented, and the judgment of the circuit court upholding the validity of such assessments was affirmed. The point, however, was simply decided, but not discussed, nor were the grounds stated upon which the affirmance was made, and it is, therefore, deemed not inappropriate to enter upon its discussion. It was provided in the constitution, both of 1820 and 1865, "that no private property ought to be taken or applied to public use without just compensation." Under both these constitutions, as well as under the constitution of 1875, the condition upon which private property may be taken to be devoted to public use is that just compensation must be made. The question, therefore, first to be considered is, what is just compensation within the

meaning of the constitution as those words are there used?

Previous to the adoption of the constitution of 1875, and as early in the jurisprudence of this state as 1857, in the case of *Newby v. Platte County*, 25 Mo. 258, in an elaborate opinion delivered by Judge Leonard, it was held that the state could take private property for public use only upon paying the owner a just compensation, and that in determining the just compensation to which the owner of property applied to public use is entitled under the constitution, it is competent for the legislature to provide that the benefits and advantages accruing to such owner in respect to the residue of his property not taken or appropriated in consequence of the use to which the part taken is appropriated, shall be taken into consideration. The meaning attached in this opinion to just compensation as used in the constitutions of 1820 and 1865, and that it might be paid to the owner in benefits specially conferred upon property not taken by the public use to which that taken was applied, has not only remained unchallenged since that time, but is abundantly sustained by the authorities referred to in the opinion. The construction thus placed on these words, and the mode of paying just compensation to the owner, recognized in the opinion as being lawful, were well known and understood by the framers of the constitution of 1875, and in the absence of anything to the contrary, the same meaning must be attached to the words, just compensation, used in the constitution of 1875, as was placed upon the same words used in the same connection in the constitutions of 1820 and 1865, and the same method of paying such compensation as valid under the constitution of 1875 as under the constitutions of 1820 and 1865. In other words, if the owner of private property taken for public use under the constitution of 1820, which forbids the taking of

private property for public use without just comyensa-tion, could be paid such just compensation by benefits conferred upon that not taken, why may it not be done under the constitution of 1875, which also forbids the taking of private property without just compensation ?

If the framers of the constitution of 1875 intended that a different meaning should be attached to these words other than that which had been judicially put upon them, or to prescribe a different mode of paying from that an-nounced in the case of *Newby v. Platte County, supra,* and re-affirmed in a number of cases since, they have failed to manifest that intention by the employment of words to express it. It is argued that such intention is manifested by the use of the words, "such compensation shall be paid to the owner, or into court for the owner, before his proprietary rights shall be disturbed." It is true that such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, as may be prescribed by law ; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the pro-prietary rights of the owner divested. If the intention was to exclude from the consideration of the jury, or board of commissioners, in ascertaining what was just compensation, benefits conferred upon property not taken by the use to which that taken was applied, it could easily have been expressed by saying that the jury or commissioners should not, in the ascertainment of such compensation, take into consideration such benefits.

This intent has not been expressed, unless it is to be found in the words, "and such compensation shall be paid to the owner, or into court for the owner," which it is argued means the payment of money. Conceding that this language can only apply to the payment of money, it does not follow that in the ascertain-

ment of what is just compensation for property taken, that the jury or commissioners are required to eliminate from their consideration benefits conferred, but the language applies to a case where the jury or commissioners, in the ascertainment of just compensation, after considering benefits conferred on the property not taken, reach the conclusion that the damages sustained by the owner by the taking of his property is in excess of the benefits, and report that he is damaged in a sum of money equal to that excess, in which event such sum must be paid either to the owner, or into court for him. Cooley on Const. Lim. [5 Ed.] 693, 694 and 700.

It may also be observed that while the constitutions of 1820 and 1865 only allowed just compensation for private property taken for public use, the constitution of 1875 provided that it should neither be taken nor damaged without just compensation. The addition of the word damaged was evidently designed to provide for a class of cases like the case of *Gurno v. City of St. Louis*, 12 Mo. 414, where a party whose property, though not taken, was damaged for public use, was held to be without remedy or redress. And it is to this class of cases that the words above considered in the second sentence in section 21, article 2, of our present constitution peculiarly applies.

For the reasons herein given the judgment of the circuit court is affirmed. All concur, except Henry, C. J., who dissents.