PALLADIUM AMUSEMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79746.   Promulgated January 21, 1938.

*Walter D. Kibler, C. P. A.,* for the petitioner.
*William E. Davis, Esq.,* for the respondent.

#### OPINION.

HILL: This proceeding involves a deficiency in income tax for the year 1933 in the amount of $3,858.36. Several issues were raised by the pleadings, but on brief petitioner, without objection by respondent, has abandoned all issues except one involving the question whether respondent erred in determining the amount of taxable profit derived by petitioner as the result of a condemnation award.

There is no controversy respecting the facts. Petitioner is a Missouri corporation, organized in 1916, with its principal place of business at St. Louis. During the year 1933 petitioner was the lessee of a certain tract of land, together with the improvements thereon, located in the city of St. Louis. Petitioner held the premises under a 25-year lease contract, expiring May 20, 1937. The land was owned by the Dubinsky Realty Co., lessor. The building on the leased premises contained a total area of 34,100 square feet, and in 1933 the city of St. Louis condemned a portion thereof, containing an area of 14,850 square feet, for street widening purposes. Petitioner was awarded as damages the sum of $49,700.95, and there was assessed against petitioner's remaining property, as benefits arising out of the improvement, the sum of $8,000. The amount of the benefits in the sum of $8,000 was set off against and deducted from the amount of the award; also the sums of $1,214.10 general taxes and $312.10 special taxes were deducted from the amount of the award, leaving a balance of $40,174.75, which was paid by the city to the petitioner in the taxable year.

The award for damages made no mention of the portions that should be considered as having been paid for the property taken and for damages to the remainder of the property, if any.

The cost of petitioner's building on the leased premises was $49,003.92 at December 20, 1913; the unamortized cost at December 31, 1932, was $11,001.38; and that portion of the unamortized cost allocable to the 14,850 square feet taken by the city of St. Louis was $4,790.93.

Out of the proceeds of the award petitioner expended in restoring the property the amount of $11,407.89.

In computing the deficiency respondent determined that petitioner derived taxable profit, as the result of the condemnation proceeding, in the amount of $38,293.06, computed as follows:

| | |
|---|---:|
| Net award received from City of St. Louis | $40,174.75 |
| Plus: General taxes withheld by City | 1,214.10 |
| Special taxes | 312.10 |
| Benefits assessed by City | 8,000.00 |
| Total gross award | $49,700.95 |
| Less: Unamortized cost of property taken | 4,790.93 |
| Profit derived | $44,910.02 |

However, respondent held that the entire profit derived was not recognizable for tax purposes, but, under the provisions of section 112 (f) of the Revenue Act of 1932, quoted in the margin,[1] was taxable in an amount not in excess of the money not expended in restoration of the property, computed as follows:

| | |
|---|---:|
| Gross amount of award | $49,700.95 |
| Less: Amount expended in restoration of property | 11,407.89 |
| Amount not so expended, which represents portion of profit subject to tax | $38,293.06 |

Petitioner contends that respondent erred in his computation of net taxable profit in failing to deduct from the gross award the amount of $8,000 representing benefits assessed against the property

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

of petitioner not taken by the city; and, in the alternative, petitioner contends that the $8,000 benefits assessed should be added to the unamortized cost of the whole property, to wit, $11,001.38, in order to arrive at the "basis" for computing the cost of the portion of the building condemned.

Petitioner further argues on brief that the amount of $11,407.89 expended in restoration of the property should be deducted from the *gross profit* in determining the amount of the net profit subject to tax. This contention can not be sustained. The statute quoted, *supra*, plainly provides that in case any part of the money into which a taxpayer's property is involuntarily converted is not expended for replacement, the gain derived shall be recognized but in an amount not in excess of the money which is not so expended. Hence, the amount "not so expended" is not the difference between the amount expended and the gross profit, but it is the difference between the amount expended and the gross amount of the award received by the taxpayer. So much of the profit as does not exceed the latter amount is subject to tax.

Respondent's computation of the profit derived by petitioner by reason of the condemnation of its property, above set out, treats the entire amount of the gross award as gross income received by petitioner. From the gross award so received there is then deducted the cost basis of the property taken, the balance representing the profit derived. The profit derived is recognized and taxed to the extent that the gross award exceeds the amount expended in restoration of the property. This method of computing the profit treats the $8,000 benefits assessed as additional cost of the property remaining or not taken in the condemnation proceeding, and not as a reduction of the award. It is the latter action to which petitioner objects.

The city of St. Louis is a separate municipality of the State of Missouri under the provisions of sections 20–26 of Article IX of the Constitution of Missouri of 1875, and is governed by a special charter.

Under the charter of the city of St. Louis and particularly Article XXI thereof, the city of St. Louis is authorized to condemn or damage private property, real or personal, or any easement or use therein for public use.

The following are the applicable provisions of Article XXI of the charter of the city of St. Louis, Missouri:

### SECTION 1.

Condemnation of or damage to private property, real or personal, or any easement or use therein for public use shall be effected as herein provided and as may be further provided by ordinance not inconsistent with this charter * * *.

### SECTION 5.

The Commissioners shall view the property to be taken, damaged, or assessed; fix the benefit or taxing district; publish in said newspaper for ten days before beginning their assessment a notice of the boundaries of the benefit or taxing district and of the time and place at which they will assess such damages and benefits; hear the evidence submitted by the parties interested, assess the damages and benefits as of the date said ordinance became effective; and make a report, in which at least two commissioners shall concur, of such assessment in writing and under oath to the Circuit Court. In such report the compensation allowed to and the benefits assessed each owner shall be separately stated. When the commissioners both assess benefits and allow damages against one property owner they shall deduct the lesser from the greater.

### SECTION 6.

At any time after the commissioners file their report the City may pay into court the amount of damages assessed, less benefits, if any, and thereupon it shall be entitled to take possession of or damage the property, assuming the lien of all general taxes not then payable on the property actually appropriated.

### SECTION 8.

The court upon approving the commissioners' report shall render final judgment thereon reciting the report and adjudging that the City have and hold the property petitioned for, describing the same, for the purposes specified, upon payment of the damages less the benefits assessed in each instance: * * *

Article IX, section 21, of the Constitution of Missouri, 1875, provides that all courts shall take judicial notice of the copy of the scheme and charter of the city of St. Louis.

Under the Constitution of Missouri and the charter of St. Louis "just compensation" for private property taken for public use may be paid in benefits specially conferred upon property not taken and such compensation to be paid in cash is measured by the amount by which the damages sustained by the taking of property exceeds the benefits conferred upon that not taken. See *State ex rel Chicago, B. & Q. R. Co.* v. *City of Kansas*, 89 Mo. 34; 14 S. W. 515.

Pursuant to the authority conferred by the charter of St. Louis and the procedure therein prescribed, the amount of damages in the present case to the property taken for public use, plus the severance damages to the residuary property, was determined to be $49,700.95, and the amount of benefits assessed to the property not taken was $8,000. The amount of the damages less the amount of the benefits assessed was paid to petitioner. Thus, the compensation received by petitioner was $41,700.95 in cash and an increment to the value of the remaining property in the amount of $8,000. The net amount of damages sustained by petitioner was $41,700.95, the remainder of the damages being offset by an increase in value of

the property remaining to the extent of $8,000. What then was the amount of the award for the purposes of taxation? Petitioner was paid in cash only the net amount of the damages sustained, to wit, $41,700.95. It did not receive the remaining $8,000 of the award in any form segregated or derived from the remaining property. To the extent of $8,000 the award of $49,700.95 was not income to petitioner. It represented merely an increment to the value of the property not taken. That increment will become income only when, if ever, there is such disposition of the property in question as will convert such increment into realized gain. Until that eventuality occurs, the amount of $8,000 of the award represented by benefits to the land not taken is not taxable and should be excluded from the award of $49,700.95 and from gross income in determining petitioner's tax liability.

The $8,000 benefits should not be added to the cost basis of the remaining property. While the benefits represent an increment in the value of such property, petitioner, having paid nothing therefor, is not entitled to increase the cost basis. No benefit assessment was in fact made, and hence it can not be said that $8,000 of the gross award was used to discharge a legal obligation of petitioner. The determination was that the value of the property taken, plus damages, was $49,-700.95, and that the remaining property was benefited to the extent of $8,000. The "just compensation" for the property taken and the damage to the remainder was, therefore, $8,000 paid in benefits to the remaining property and $41,700.95 paid in cash, which latter amount only constituted gross income to petitioner, and leaves undisturbed the cost basis of property not taken. If the amount of benefits be excluded from the gross award in computing gross income and also be added to the cost basis of the remaining property, then petitioner would have the benefit of the exclusion in the taxable year, and would recover tax-free in a subsequent year, the same amount, thus for tax purposes in effect getting a double deduction.

Respecting the inherent nature of a benefit assessment, the Court of Appeals for the Second Circuit, in *Carrano* v. *Commissioner*, 70 Fed. (2d) 319, said:

In this instance the "gain" in dispute could arise only on the hypothesis that so much of the award as paid the assessment was received before the assessment itself was paid. This was demonstrably not the case; it was received at the same time. Thus it does not affirmatively appear to be a "taxable" gain at all, and the taxpayer wins. Moreover, this is the direct and natural way to look at the transaction. *The taxpayer has "gained" only what he has received above his cost; so far as his award has been cancelled by the assessment, it is not a "gain" at all, it is instantly absorbed by a new cost which arises and is paid without allowing him even a momentary possession of the "gain."* [Italics supplied.]

154

In the case of *Wolf* v. *Commissioner*, 77 Fed. (2d) 455, the Court of Appeals for the Ninth Circuit quoted with approval the above extract from the *Carrano* opinion, but said:

The gain, if any, derived by the taxpayer from the transaction was in the increased value of the property already owned by him. *This increase is not a taxable gain.* [Italics supplied.]

The identical question presented here, and on facts in all material respects the same, was first considered by the Board in the case of *Antonio R. Carrano*, decided in a memorandum opinion entered April 18, 1933. There respondent determined a gain by the same method employed in this proceeding; that is, by deducting from the gross award the cost of the property taken, treating a benefit assessment as additional cost of the property retained and including the full amount in gross income. The petitioner specifically contended that, since he actually received only the difference between the gross award and the amount assessed for benefits, the taxable income, if any, derived from the condemnation of his property was the difference between the net amount so received and the cost of the appropriated property. The Board rejected this theory and approved the deficiency determined by respondent. The decision was reversed by the Court of Appeals for the Second Circuit in *Carrano* v. *Commissioner, supra*.

A situation substantially similar in principle to the case at bar was presented to the Board in *L. H. Wolf*, 29 B. T. A. 702, promulgated in January 1934. There, as here, respondent computed the taxable gain by deducting the allocated cost of the property condemned from the whole award for the same property, thus including a benefit assessment in gross income. However, only two questions were raised before the Board, namely, whether the proceeding constituted a closed transaction, and whether it resulted in the acquisition by the petitioner of "property similar or related in service or use." The first question was answered in the affirmative, the second in the negative, and respondent's determination of gain approved. On appeal, the decision was reversed in *Wolf* v. *Commissioner, supra*.

The same question was presented and like decisions rendered by the Board in *Christian Ganahl Co.*, 34 B. T. A. 126, and in *Central & Pacific Improvement Corporation*, 34 B. T. A. 208. The Board's decision in the *Ganahl* case was reversed by the Circuit Court of Appeals for the Ninth Circuit on July 12, 1937, 91 Fed. (2d) 343; certiorari denied, 302 U. S. 748, and the decision in *Central & Pacific Improvement Corporation*, was reversed by the same court on September 13, 1937, 92 Fed. (2d) 88. The decisions

of the court in the above cases were followed by the Board in *Calvin C. Green*, 37 B. T. A. 25.

The deficiency in controversy will be redetermined by computing the taxable profit derived by petitioner from the condemnation of its property as follows:

| | |
|---|---:|
| Gross award | $49,700.95 |
| Less: Benefits assessed | 8,000.00 |
| | 41,700.95 |
| Less: Cost of property taken | 4,790.93 |
| Profit realized | 36,910.02 |

However, of the profit realized, only the amount of $30,293.06 is recognizable for tax purposes, under the provisions of section 112 (f), *supra*. Of the gross award of $49,700.95, $8,000 consisted solely of benefits to the remaining property in the form of increased value, and of the net or cash award of $41,700.95, the amount of $11,407.89 was expended in restoration of the property, leaving $30,293.06 not so expended, which measures the amount of the profit subject to tax.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*