Ridge Road Investment Corporation v. Commissioner.
Ridge Rd. Inv. Corp. v. Commissioner
Docket No. 341.
United States Tax Court
1944 Tax Ct. Memo LEXIS 344; 3 T.C.M. (CCH) 197; T.C.M. (RIA) 44070; February 29, 1944
*344 Sidney S. Gorham, Jr., Esq., for the petitioner. E. C. Adams, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1939 in the amount of $2,082.33, and in its excess profits tax for the same period in the amount of $724.14, resulting from his action disallowing a deduction in the amount of $10,286.38 claimed by petitioner because of worthlessness of certain real estate, and including in petitioner's taxable income the amount of $5,753.14 received from the State of Indiana and excluded by petitioner from its taxable income on the ground that it represented an allowance for severance damages applicable to the basis of the property damaged. Findings of Fact The petitioner is an Indiana corporation, with its principal place of business in Gary. It filed its income and excess profits tax return for 1939 with the collector of internal revenue at Indianapolis. Indiana. The petitioner is and has been, since its incorporation in 1931, engaged in the real estate business. Its president and principal stockholder is Harry R. Englehart. First issue. Many of the lots involved in *345 this issue were acquired by Englehart individually, at the time of his withdrawal, in 1929, from the Englehart Realty Corporation, in consideration of the surrender of the stock which he had held in that corporation. These, together with lots acquired from other sources, were transferred by Englehart to petitioner at the time of its organization in 1931, in exchange for the issuance to him and his wife of all the capital stock of petitioner. During all these years there were outstanding against the lots involved here, which petitioner contends became worthless in 1939, special assessment liens, securing certain special assessment bonds, the principal and accrued interest of which exceeded the fair market value of the lots prior to 1939, although their amount is not disclosed by the record. It was, however, possible to purchase these bonds at prices ranging from ten to fifty percent of the face value. It was a common practice among real estate dealers or owners in Gary, when a purchaser was found for a certain lot, to buy at a discount, bonds of a face value equal to the assessment against such lot, pay in to the treasurer the amount due on the assessment against the lot, thus freeing *346 the lot of the lien, and by immediately presenting for payment the bonds previously purchased at a substantial discount, to receive back from the treasurer the money just paid in to discharge the assessment lien. It was, by this procedure, possible for the owner of a lot to sell it for less than the face amount of the liens against it, but for more than the discounted value of the bonds, and realize some profit on the entire transaction. Petitioner did not make any sales under these circumstances, although the bonds were available to it, as to others, at various discounts in the event it had been able to arrange a sale of the lots affected. In 1939, the Supreme Court of Indiana decided that monies paid in discharge of special assessment liens against real estate must be applied by the treasurer pro rata to all the bonds of that issue, rather than to the full payment of the first bonds presented for payment. This decision effectively ended the practice described above. Thereafter, in 1939, petitioner charged off as worthless the lots involved here, and deducted the entire amount of its loss, $10,286.38, from its taxable income for that year. Second Issue. During 1939, petitioner *347 received the sum of $20,220.78 from the State of Indiana in connection with the construction by the State Highway Commission of an elevation over a railroad on U.S. Highway 6. The transfer of the land required for the right of way, and the payment to petitioner of the amount here in controversy, were accomplished by an agreement between petitioner and the State Highway Commissioner, without resorting to condemnation proceedings. During the negotiations leading to the transfer, the parties recognized the fact that damages of a compensable nature would be done to land adjoining that actually taken. The records of the highway commission indicate that the total amount paid by it to petitioner was allocated by the Commission on its own records as follows: 170,388 square feet of land at 6 1/2 per sq. ft.
$11,075.22
Damage to 600,000 square feet at
1 1/2 per sq. ft.
9,000.00
Compromise
145.56
$20,220.78
Petitioner, however, made the following allocation of the total sum received on its books as follows: Compensation for land taken
$14,467.63
Damages to land retained
5,753.15
$20,220.78
Accordingly, petitioner reported the receipt of $14,467.63 as proceeds *348 from the sale of land, and applied $5,753.15 to the basis of the land retained by it. The application of $5,753.15 to the basis of the damaged lots resulted in the reduction of the book value, alleged to be its basis thereto, of 127 lots to $25 each, and a complete elimination of the book value of 51 lots. There was no agreement on the amount to be allowed as severance damages. Opinion KERN, Judge: With respect to the first issue before us, we have to decide, first, whether petitioner suffered a loss in 1939, by reason of certain real estate becoming worthless in that year, and, if so, then the amount thereof. We have been unable to proceed beyond the first question so presented. In order to establish that a loss was sustained in the taxable year, in the face of the Commissioner's determination that it was not then sustained, petitioner has the burden of establishing by the evidence that the property which is the subject of the claimed loss had a value as of the close of the year immediately preceding the taxable year. This essential fact can not be fairly determined from all the evidence before us. Petitioner concedes that the face amount of the assessment liens against the real *349 estate exceeded its fair market value in years earlier than 1939. But it relies on the fact that it was possible at all such times and thereafter until the taxable year, to discharge such liens at a fraction of their face value, ranging from ten to fifty percent thereof. But there is a complete and unfortunate lack of any evidence whatever that the fair market value of the lots at any given time was in excess of the amount for which bonds could be bought at such time. On the contrary, we might infer from the fact that the lots were held for sale by petitioner during all the years under consideration, and none was sold despite the availability of the favorable arrangement described in our findings, that they did not then have a market value greater than the discounted price of the bonds. There is in evidence a letter dated July 27, 1938, containing a proposal to buy one lot for $50 net to petitioner, contingent upon the purchaser's ability to complete arrangements to secure an adjoining lot from another owner. The evidence indicates that the sale was not consummated, but does not assign the reason. Proof of such an offer would be helpful in determining the value of the lot to which *350 it related, if it were possible to identify it, and would be some evidence of the value of other lots similar or comparable in size, location and value generally. But we can not determine from the record which lot was the subject of the offer, other than that it was in Sunset Park, a subdivision in which petitioner owned approximately 17 lots which are involved here; and there is no evidence from which we can determine which, if any, of the other lots were of comparable value. Aside from this letter, the only other evidence offered us is the bare opinion of Englehart that the lots had market value up to 1939. But the evidentiary value of Englehart's opinion is weakened by its vague generality. He does not testify as to what in his opinion the fair market value of the various lots was, nor is there any evidence in the record as to the amount of the principal and accumulated interest of the assessment bonds outstanding against these various lots. Neither is there any evidence in the record as to the amounts of unpaid state and local taxes which were a lien upon them, although the record shows that no taxes were paid on these lots since 1929. It is obvious that the lots were not of uniform *351 value and that the amounts of unpaid taxes and assessment liens were not the same with regard to each lot. It is also clear that different lots and subdivisions were subject to the liens of different assessment bond issues which, in turn, were to be bought at different rates of discount. When we consider that no taxes were paid on these lots since 1929, that the liens of assessment bonds alone were conceded by petitioner's president to be in amounts in excess of their fair market value, and that none of the lots had been sold by petitioner even under the system of discounting assessment bonds detailed in our findings, we can not consider the broad conclusion of Englehart that the lots had a market value up to 1939 as adequately supporting the burden of proof placed upon petitioner with regard to this issue by respondent's determination. The second issue relates to the tax treatment of the sum of $20,220.78 received by petitioner from the State of Indiana as the result of negotiations initiated by the State to secure right of way for the construction of an elevation over a railroad. The total amount so paid was agreed upon by the parties, eliminating the necessity of condemnation *352 proceedings, and the land required for the elevation project was conveyed to the State. The State Highway Commission on its records allocated $9,000 to severance damages, while petitioner, on its books, allotted $5,753.15 to that amount, applying it to the basis of the lots retained, and returned the balance as part of its income subject to tax. Respondent determined the entire amount to be subject to taxation and argues that there is no showing that the land remaining in petitioner's hands was not benefited more than it was damaged, by the construction of the elevated highway, and suggests, further, that the damage, if any, was done in some year other than 1939. There is evidence that damage was done to all the lots about which there was any evidence at all, in connection with this issue. If petitioner owned lots other than those which were damaged, which may have received benefits sufficient to offset the damage done to these lots, we are not informed of it. And even if such were the case, we do not believe that fact would render an award for damages to these lots includible in petitioner's taxable income as proceeds from the sale of real estate, if it were, in fact, an award *353 for damages. Respondent's argument that the damage, if any, occurred in 1938, is based on a misconception of the evidence. While it is true that Englehart, at one point, stated that the overhead bridge was built in 1938, a careful consideration of his entire testimony clearly shows that he corrected that error after refreshing his recollection from his records. The date of the grant of the land to the state was shown to be April 25, 1939, and the elevation was constructed after that date. It is well settled, and it is not questioned in this proceeding, that a transfer of property for a just compensation, as a result of condemnation proceedings, is a sale, for tax purposes, and the gains arising therefrom are taxable to the transferor. The question has frequently arisen, in connection with such cases, as to the taxability of sums, either separately awarded, or separately calculated and included in the total award, as severance damages to property damaged but not taken in such proceedings. The latest pronouncement of this Court on that question was contained in Pioneer Real Estate Co., 47 B.T.A. 886, in which it was held that the award for severance *354 damages should not be included in the taxable income of the petitioner as proceeds from the sale of the property taken, but should be applied to a reduction of the basis of the retained and damaged property. A different treatment of severance damage awards has sometimes been required in cases which also involved assessments of special benefits. Wolf v. Commissioner, 77 Fed. (2d) 455; Christian Ganahl Co. v. Commissioner, 91 Fed. (2d) 343, cert. denied 302 U.S. 748; Central & Pacific Improvement Corporation v. Commissioner, 92 Fed. (2d) 88; Palladium Amusement Co., 37 B.T.A. 149; Income Syndicate, Inc., 37 B.T.A. 926; and Langley Collyer, 38 B.T.A. 106. These cases all involved special benefit assessment, with which we are not here concerned, and were effectively distinguished in Pioneer Real Estate Co., supra. There is a distinction immediately noticeable between the Pioneer Real Estate Co., supra, and *355 the case now before us, in that there a definite award in a specified amount was determined and allowed as severance damages by a court in condemnation proceedings. Respondent's argument that this was a wholly voluntary sale of real estate for a stipulated agreed sum of $20,220.78, without any reference to damages, is an over-simplification of the situation existing here, since it ignores certain phases of the evidence. However, there are elements, vital to petitioner's case, which are lacking here, and for lack of which this case does not conform to the pattern of the Pioneer case, supra. We have evidence that damage was done to the property adjoining that taken for highway purposes, as well as evidence that the parties contemplated the possibility that damage would be done which would be a proper element for just compensation. What we do not know is, how much, if any, of the amount received by petitioner was compensation for damage, and this we must know before we can say respondent erred in his determination that the entire amount was taxable. We are unable to say exactly what agreement was finally reached. If we assume that the grant, referred to but not introduced *356 in evidence, transferred to the state title to the land required by it, in consideration of the payment to petitioner of $20,220.78, we are unable to distinguish this case, in any respect favorable to petitioner, from Marshall C. Allaben, 35 B.T.A. 327, 328. It is vital to petitioner's success here that a showing be made that some certain part of the money received by it, and determined by the respondent to be includible in its taxable income as proceeds from the sale of real estate, is not, in fact, such proceeds, but is, actually, compensation for damages sustained. In the absence of judicial determination and award, we might be able to recognize as a substitute a reasonable, clearcut and bona fide agreement between the parties, where, as here, there is inherent in the situation a threat of condemnation, if accompanied by a satisfactory showing that the agreement was executed according to its terms, and that the sum alleged to be allocated to damages was actually paid and received as damages. We have here, admittedly, no such agreement on that point. The evidence indicated that the state paid $9,000 as damages while the petitioner receved and *357 acknowledged as such only $5,753.15. The variance between the state's and petitioner's allocation to damages can not be dismissed, as petitioner suggests, simply as disagreement between experts on the amount of damage done. It creates a void in petitioner's case on this issue since it is impossible under these circumstances to say that any certain amount was paid by state or received by the owner of the land as severance damages. We think the conclusion is inescapable that there was no agreed award for damages, but simply a compromise agreement on the gross amount to be paid by the state for the land which was needed for its project. The allocation of that sum was later made by each party separately to suit its own purposes or to conform to its own ideas, and that is the procedure expressly prohibited in Marshall C. Allaben, supra. We are unable to say, upon the evidence before us, that the respondent erred in treating the entire amount as the purchase price of the land conveyed by petitioner to the State Highway Commission. Because of our holding on the principal question involved in each issue herein, it is unnecessary to discuss the questions presented *358 as to the proper basis of the land in petitioner's hands. Decision will be entered for respondent.